**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

SHANNON H.,[1]             )
                           )
    *Plaintiff*,       )
                           )
     v.          )     Civil No. 3:23-cv-00460-HEH-SLS
                           )
MARTIN O'MALLEY,     )
Commissioner of the       )
Social Security Administration,[2]  )
                           )
    *Defendant*.     )
                           )

## REPORT AND RECOMMENDATION

In this action, Plaintiff Shannon H. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title XVI application for Supplemental Security Income ("SSI"). This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 15, 18.) The motions have been fully briefed (ECF Nos. 15, 16, 18), rendering this matter ripe for review.

Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de novo* hearing and new decision. (Plaintiff's Memorandum of Law in Support of a Social Security Disability Appeal (ECF No. 16) ("Pl.'s Mem.") at 8-9.) As the basis for such relief, Plaintiff argues that the Administrative Law Judge's ("ALJ") mental residual functional capacity ("RFC")

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

determination is not supported by substantial evidence because it materially conflicts with the opinion evidence of Joseph Leizer, Ph.D. ("Dr. Leizer") and Richard Luck, M.D. ("Dr. Luck"). (Pl.'s Mem. at 1, 4-8.)  The Commissioner counters that the ALJ properly considered and analyzed the opinions in accordance with applicable regulations and requests that the Commissioner's final decision be affirmed.  (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 18) ("Def.'s Mem.") at 13-19.)

For the reasons set forth below, the ALJ properly assessed the medical opinion evidence in accordance with the regulations, and substantial evidence supports the ALJ's mental RFC findings. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 15) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for SSI on December 17, 2020 alleging that she suffered from bipolar disorder, borderline personality disorder, fibromyalgia, irritable bowel syndrome ("IBS"), and chronic fatigue.  (Administrative Record ("R.") at 17, 211.)[3]  She initially alleged onset of disability on January 29, 2009, but later amended the onset date to December 17, 2020.  (R. at 17, 60-61.)[4]  The SSA denied Plaintiff's claim initially and again upon reconsideration.  (R. at 63-64, 80-81.)  Plaintiff requested a hearing before an ALJ, and one was held on November 1, 2022.  (R. at 38-62, 135-40.)

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.
[4] Plaintiff also filed an application for Title II disability insurance benefits but later withdrew that application.  (R. at 17-18.)  Therefore, the ALJ's decision addresses only Plaintiff's application for SSI.  (R. at 18.)

On November 18, 2022, the ALJ issued a written decision, finding Plaintiff not disabled under the Social Security Act ("the Act"). (R. at 17-31.) On May 23, 2023, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g) and § 1383(c).

## II.      STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* § 416.920(a)(4)(iii). Between steps three and four, the ALJ determines the

claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 416.925(a).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 416.920(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 416.920(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert ("VE"). *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843

F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589.  The court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight."  *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.     THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process.  (R. at 17-31.)  *See* 20 C.F.R. § 416.920(a)(4); *Mascio*, 780 F.3d at 634.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 17, 2020 (the amended onset date).  (R. at 20.)  At step two, the ALJ determined Plaintiff suffered from the following severe impairments: IBS, fibromyalgia, obesity, depression, bipolar disorder, and borderline personality disorder.  (R. at 20.)  At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 20-23.)

The ALJ then determined Plaintiff's RFC.  (R. at 23-29.)  Based on the evidence in the record, the ALJ found that Plaintiff retained the ability to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following limitations:[5]

> She is able to understand, remember, and carry out simple routine tasks for two hours at a time with normal breaks.  She is able to concentrate, persist, and maintain pace to complete goal-oriented task[s] that do not require quotas, assembly line work, or production rate pace.  She may have occasional contact with coworkers and supervisors but no contact with the public in settings where tasks involve work primarily with objects rather than people.  She is able to adapt to occasional workplace changes.

(R. at 23.)

The ALJ determined Plaintiff's RFC after considering Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence as required by 20 C.F.R. § 416.929 and SSR 16-3p.  (R. at 23.) Regarding Plaintiff's symptoms, she testified that her depression, bipolar disorder, and borderline personality disorder caused symptoms of "flashbacks, difficulties getting out of bed, feeling run down, anxiousness, inability to leave the house at times, difficulty getting along with other people, suicidal thoughts, suicidal attempt in 2020, concentration problems, sleep disturbance, and nightmares for which she takes psychotropic medications."  (R. at 24 (internal record citations omitted).)  Plaintiff testified she has called the Crisis helpline, lives with her ex-husband who provides financial support and help, and no longer drives because of fear.  (R. at 24.)

After analyzing the medical evidence, Plaintiff's daily activities, and medical opinion evidence, the ALJ found Plaintiff's statements about "the intensity, persistence and limiting effects of these symptoms . . . not entirely consistent with the medical evidence and other evidence in the

---

[5] Because Plaintiff challenges the ALJ's conclusions regarding her mental impairments and resulting limitations, the Court restricts its discussion to Plaintiff's mental health conditions.

record for the reasons explained in this decision." (R. at 28.)  Regarding the medical evidence, the ALJ found that the record supported Plaintiff's "mental symptoms of frequent crying, sadness, emptiness, feeling down, loss of energy, fatigue, worthlessness, recurrent suicidal ideation, hypersomnia, feeling on edge, tenseness, worry, and concentration difficulties." (R. at 24.)  But the evidence also showed that Plaintiff lessened the limiting effects of those symptoms through therapy and medication management.  (R. at 28.)

The ALJ summarized the following from progress notes and medical records:

- November 2020: unremarkable mental status examination with the exception of anxious mood and denied suicidal ideation (R. at 24);

- February 2021: unremarkable mental status examination and reported breaking up with her partner and beginning a new relationship (R. at 24);

- March 2021: unremarkable mental status examination and reported considering "terminating services, attributing much of her earlier distress to a toxic relationship with her ex-boyfriend" (R. at 24);

- March 2022: unremarkable mental status examinations with the exception of the presence of psychotic or borderline psychotic process and reported being able to perform more activities of daily living, being in good health, in a good mood, and getting stable sleep (R. at 25);

- June 2022: unchanged mental status examination and reported "good results with current medications" (R. at 25);

- September 2022: reported calling Crisis line because she was worried about losing housing with her ex-husband and stated it was "helpful to talk with Crisis" (R. at 25); and

- October 2022: reported feeling depressed and overwhelmed due to family and boyfriend issues, difficulties cleaning around the house and sleeping all day, but "making progress towards her therapy objectives" (R. at 25).

The ALJ concluded:

Overall, [Plaintiff's] hearing testimony indicating her main problems concerned her mental illness is consistent with the evidence presented after the amended onset date. . . Progress notes revealed multiple unremarkable psychiatric/mental status examinations.  Psychiatric/mental status examinations further revealed anxious

> mood, but also revealed alertness, orientation, friendliness, cooperativeness, attentiveness, euthymic mood, stable/appropriate affect, good judgment and insight, logical, cohesive, coherent and goal-directed thought processes/content, average intellect, intact memory and cognitive functioning, and normal speech and fund of knowledge otherwise. [Plaintiff's] therapy and medication management were continued.

(R. at 25 (internal record citations omitted).)

The ALJ also found Plaintiff's daily activities "inconsistent with her complaints of prolonged and consistent disabling functional limitations." (R. at 28.) Plaintiff could perform most activities of daily living, including taking care of pets, performing independent personal care, preparing simple meals, using the dishwasher, doing laundry, beading and making jewelry, paying bills, shopping online and in stores, and spending time with a friend or boyfriend. (R. at 29.) In addition, Plaintiff received her GED and attended college for half a semester. (R. at 24.) The ALJ found Plaintiff's ability to complete these activities "inconsistent with disability." (R. at 29.)

The ALJ also considered medical opinions and prior administrative medical findings as required by 20 C.F.R. § 416.920c. (R. at 26-27.) Relevant to Plaintiff's assignment of error, the ALJ considered the opinions of state agency psychological consultants Drs. Leizer and Luck. (R. at 26-27.) Dr. Leizer opined that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace and mild limitations in adapting or managing oneself. (R. at 26.) Dr. Leizer concluded that Plaintiff could remember and carry out "very short and simple instructions, mak[e] simple work-related decisions, work[] in coordination with or in proximity to others, and interact[] with the general public and get[] along with coworkers." (R. at 26-27.) He recommended that Plaintiff be limited to unskilled work with occasional interactions with the general public and coworkers. (R. at 27.) Dr. Luck largely affirmed Dr. Leizer's opinion but eliminated an occasional limitation on Plaintiff's interaction with others and added that Plaintiff could perform simple

routine tasks.  (R. at 27.)    The ALJ found these opinions partially persuasive.  (R. at 27.) Specifically, the ALJ found the opinions supported but "somewhat internally inconsistent as well as inconsistent with the evidence presented at the hearing level [which] depicts greater concentration and social restrictions warranting the additional residual functional capacity limitations assessed hereinabove."  (R. at 27.)

After completing the RFC assessment, the ALJ found at step four that Plaintiff was unable to perform past relevant work as a telemarketer.  (R. at 29.)  The ALJ then determined Plaintiff's vocational factors, including that she met the definition of a younger individual on the alleged onset date and had at least a high school education.  (R. at 29.)  At step five, the ALJ found, based on VE testimony, that there were jobs in significant numbers in the national economy that Plaintiff could perform given her limitations, including the jobs of industrial cleaner, counter supply worker, and day worker.  (R. at 29-30.)  The ALJ concluded that Plaintiff was not disabled as defined by the Act from December 17, 2020, the amended onset date, through November 18, 2022, the date of the decision.  (R. at 30.)

## IV.    ANALYSIS

Plaintiff contends that Drs. Leizer and Luck limited Plaintiff to performing only very short and simple instructions.  (Pl.'s Mem. at 5.)  Even though the ALJ found their opinions partially persuasive, she concluded that Plaintiff could perform jobs at step five which required an ability to perform detailed instructions.  (Pl's Mem. at 6-7.)  Plaintiff argues that the ALJ failed to explain this conflict in violation of applicable regulations and that substantial evidence does not support the RFC.  (Pl.'s Mem. at 7-8.)  The Commissioner responds that Plaintiff "overreads" the findings of Drs. Leizer and Luck because "they did not 'limit' Plaintiff to very short and simple instructions, as Plaintiff alleges."  (Def.'s Mem. at 3, 13.)

The record shows that Drs. Leizer and Luck opined that Plaintiff was "not significantly limited" in her ability to perform short and simple instructions and only "moderately limited" in her ability to perform and carry out detailed instructions.  (R. at 72, 96.)  Moreover, the record shows that the ALJ properly assessed the medical opinion evidence in accordance with applicable regulations, and substantial evidence supports the ALJ's RFC determination.  For these reasons and those stated below, the Court finds no error.

### A.  Applicable Regulations for Evaluating Medical Opinion Evidence

Under applicable regulations,[6] the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources without deferring or giving any specific evidentiary weight to any.  20 C.F.R. § 416.920c(a).  Specifically, the ALJ must articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements.  *Id.* § 416.920c(b)-(c).

Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion.  *Id.* § 416.920c(b)(2).  The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical

---

[6]  Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework.  20 C.F.R. § 416.920c.

sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  *Id.* § 416.920c(b)(2).

### B.  Drs. Leizer's and Luck's Medical Opinions

State agency psychological consultant Dr. Leizer completed a mental RFC assessment form on August 2, 2021.  (R. at 71-74.)  Therein, and as relevant here, he opined that Plaintiff was "Not Significantly Limited" in her ability to "remember locations and work-like procedures," understand, remember, and carry out "very short and simple instructions," and "make simple work-related decisions."  (R. at 72.)  He found Plaintiff "Moderately Limited" in her ability to understand, remember, and carry out "detailed instructions."  (R. at 72.)  Dr. Leizer explained: "[Plaintiff] would have difficulty carrying out detailed instructions and maintaining concentration due to anxious symptoms, mood swings, poor insight and judg[]ment, and chronic fatigue. [Plaintiff] is able to carry out very short and simple instructions, and to make simple work-related decisions."  (R. at 72.)  Dr. Leizer further limited Plaintiff to "unskilled work" with "occasional interactions with the general public and coworkers."  (R. at 73.)

On January 5, 2022, state agency consultant Dr. Luck affirmed most of Dr. Leizer's findings.  (R. at 95-98.)  Dr. Luck removed the limitation related to occasional interaction with the general public and coworkers due to Plaintiff's ability to carry on conversations without difficulty and participate in social activities.  (R. at 97.)  Dr. Luck also added that Plaintiff could perform simple routine tasks.  (R. at 97.)

### C. The ALJ Applied Correct Legal Standards in Evaluating Drs. Leizer's and Luck's Medical Opinions, and Substantial Evidence Supports the ALJ's Determinations

The ALJ applied correct legal standards in analyzing the opinions of both Drs. Leizer and Luck.  She found their opinions:

> partially persuasive to the extent their review of the evidence of depression, personality disorder, and related symptomology, but some normal psychiatric/mental status examination findings support a majority of the moderate limitations documented in their summaries.  However, the [ALJ] finds these opinions somewhat internally inconsistent as well as inconsistent with the evidence presented at the hearing level [that] depicts *greater* concentration and social restrictions warranting the additional [RFC] limitations assessed hereinabove.

(R. at 27 (emphasis added).)  The ALJ properly considered the supportability and consistency factors.  She found their review of the evidence and examination findings supported the no more than moderate limitations noted.  (R. at 27.)  The ALJ also identified the inconsistency between their opinions regarding social restrictions and noted that hearing level evidence justified greater concentration and social restrictions than found by Drs. Leizer and Luck.  (R. at 27.)  Specifically, the ALJ limited Plaintiff to understanding, remembering, and carrying out simple routine tasks for two hours at a time and concentrating, persisting, and maintaining pace in goal-oriented tasks that are not confined to quotas or assembly line or production rate pace.  (R. at 23.)  The RFC also limited Plaintiff to occasional contact with coworkers and supervisors, no contact with the public, and tasks involving work primarily with objects rather than people.  (R. at 23.)  Thus, the ALJ sufficiently explained her analyses of Drs. Leizer's and Luck's opinions.  *See Owens v. Kijakazi*, No. 22-1273, 2023 WL 2344224, at *3 (4th Cir. 2023) (stating that there is no categorical rule that the ALJ "specifically reject every limitation contained in a report the ALJ has discussed and found to be only partially or somewhat persuasive, so long as the reviewing court can ascertain the basis for the ALJ's findings").

Plaintiff argues that SSR 96-8p requires that "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184, at *7.  Plaintiff contends that the ALJ did not apply correct legal standards because she failed to explain her rejection of Drs. Leizer and Luck's opinion limiting Plaintiff to very short instructions.  (Pl.'s Mem. at 7.)  Plaintiff further asserts that had the ALJ limited Plaintiff to jobs "requiring no more than very short instructions" as found by Drs. Leizer and Luck, Plaintiff could not perform the jobs later identified at step five because each require a GED reasoning level of two which involves detailed instructions.[7]  (Pl.'s Mem. at 7.)

Plaintiff's argument fails because Drs. Leizer and Luck did *not* limit her "to jobs requiring no more than *very short* instructions."  (Pl.'s Mem. at 6-7 (emphasis in original).)  Instead, they found that Plaintiff had no significant limitation in understanding, remembering, and carrying out very short and simple instructions and only moderate limitations in understanding, remember, and carrying out detailed instructions.  (R. at 72, 95-96.)  Similarly, in their narrative explanation, Drs. Leizer and Luck noted Plaintiff would have difficulty in carrying out detailed instructions and maintaining concentration due to her anxiety, mood swings, and poor insight and judgment, and fatigue but had no limitations in carrying out very short and simple instructions and making simple work-related decisions.  (R. at 72, 96.)  Dr. Luck further found Plaintiff capable of performing

---

[7] Reasoning level one jobs require the worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job."  DOT, App. C, 1991 WL 688702.  Reasoning level two jobs require the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations."  *Id.*

simple routine tasks.  (R. at 97.)  Because the ALJ did not reject Drs. Leizer's and Luck's opinions in those areas, that portion of the RFC assessment does not conflict with their medical opinions.[8]

In any event, reading the decision as a whole, the ALJ provides an adequate explanation for the mental RFC findings, including the lack of any limitation to simple instructions only and instead her determination that Plaintiff could perform simple, routine tasks with additional mental limitations.  *See Todd A. v. Kijakazi*, No. 3:20-cv-594-DJN, 2021 WL 5348668, at *4 (E.D. Va. Nov. 16, 2021) (finding that the ALJ's opinion must be read as a whole).  In the RFC, the ALJ found that Plaintiff could perform medium work, with a limitation that she can "understand, remember, and carry out simple routine tasks[9] for two hours at a time" and "concentrate, persist, and maintain pace to complete goal-oriented task[s] that do not require quotas, assembly line work, or production rate pace."  (R. at 23.)  The ALJ further limited Plaintiff to occasional contact with

---

[8] *Gloria M. v. Kijakazi*, No. 4:20-cv-44, 2022 WL 909043 (W.D. Va. Mar. 28, 2022), a case cited by Plaintiff to support her argument (Pl.'s Mem. 7-8), is distinguishable for similar reasons.  In *Gloria M.*, the ALJ erred because, among other things, he failed to explain why he rejected a doctor's opinion limiting the claimant to four hours of walking/standing and instead adopted a six-hour walking/standing limitation.  2022 WL 909043, at *7.  Here, on the other hand, the mental RFC assessment does *not* materially conflict with the opinion evidence from Drs. Leizer and Luck regarding Plaintiff's ability to understand, remember, and carry out instructions.

[9] Importantly, the RFC limits Plaintiff to *simple, routine tasks*, not *short instructions*.  (R. at 23.) The Fourth Circuit has identified "an 'apparent conflict' between a limitation to 'short, simple instructions' . . . and a need to carry out 'detailed but uninvolved . . . instructions' . . . ."  *Thomas v. Berryhill*, 916 F.3d 307, 313 (4th Cir. 2019), *as amended* (Feb. 22, 2019).  But no such conflict exists between simple, routine tasks and detailed but uninvolved instructions.  *See, e.g.*, *Lawrence v. Saul*, 941 F.3d 140, 143-44 (4th Cir. 2019) (finding "no comparable inconsistency" between limitation to "'simple, routine repetitive tasks of unskilled work'" and "Level 2's notions of 'detailed but uninvolved . . . instructions'"); *Wilhelm v. Berryhill*, No. 5:17-cv-138, 2018 WL 4705562, at *5 (W.D.N.C. Sept. 29, 2018) ("Therefore, no apparent conflict exists between jobs having a Reasoning Level of 2 or 3 and a limitation to only performing simple, routine, repetitive tasks."); *Morris v. Berryhill*, No. 3:16-cv-587, 2017 WL 4112365, at *12 (E.D. Va. Aug. 30, 2017), *report and recommendation adopted by* 2017 WL 4108939 (E.D. Va. Sept. 15, 2017) (finding that a "simple, repetitive work" limitation "falls squarely within the skills required to perform Reasoning Level 2 jobs"); *Proctor v. Colvin*, No. TMD 16-228, 2016 WL 6822477, at *9 (D. Md. Nov. 18, 2016) (finding Reasoning Level 2 consistent with simple, routine tasks).

coworkers and supervisors and no contact with the public.  (R. at 23.)  The ALJ concluded that Plaintiff could work "in settings where tasks involve work primarily with objects rather than people" and only occasional workplace changes.  (R. at 23.)  In arriving at this RFC, the ALJ analyzed and considered Plaintiff's issues related to understanding, remembering, and applying information, as well as concentrating, persisting, or maintaining pace.

At step three of her decision, the ALJ noted that in the areas of understanding, remembering, applying information, concentrating, persisting, and maintaining pace, the medical evidence of record, including mental status and psychiatric examination records, generally showed no serious deficits.  (R. at 21-22.)  While the adult function report showed some difficulties in these areas, it also showed that Plaintiff could care for her pets, perform independent personal care, prepare simple meals, use a dishwasher, do laundry, bead and make jewelry, pay bills, drive, shop by phone or computer, spend time with a friend or boyfriend, and email, text, and video chat with others.  (R. at 21-22.)  Plaintiff also testified that she earned a GED and attended college for half a semester, washes dishes, and does laundry, "which requires at least a basic level of understanding, remembering, and applying information" and "some concentration, persistence, and pace."  (R. at 21-22.)  Plaintiff also did not generally complain of symptoms related to understanding, remembering, concentrating, or persisting.  (R. at 21-22.)  This led the ALJ to conclude at step three that Plaintiff's mental impairments caused no more than moderate limitations in these areas.  (R. at 21-22.)

The ALJ further analyzed Plaintiff's complaints and reported symptoms, the medical evidence, Plaintiff's activities of daily living, and medical opinion evidence in conducting the mental RFC assessment.  (R. at 23-29.)  Overall, the ALJ found that "the degree of limitation alleged [by Plaintiff] is not supported in the record."  (R. at 28.)  The ALJ supported her finding

by pointing to: (1) "multiple unremarkable psychiatric/mental examinations" (R. at 28); (2) improved and controlled mental health symptoms in response to conservative treatment and medications (R. at 28); (3) Plaintiff's activities of daily living which support her "ability to take care of personal needs and perform simple routine tasks at a nonproduction rate pace with limited interaction with others" (R. at 28); and (4) assessments of medical opinion evidence "which support no more than moderate functional limitations and the ability to perform simple routine tasks with limited interaction with others" (R. at 27). Thus, the ALJ provided adequate explanation and analysis that allows for meaningful judicial review, and substantial evidence supports the mental RFC determination.

## V.    CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 15) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Henry E. Hudson and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/ _____

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: June 14, 2024